**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

WASHINGTON ENVIRONMENTAL
COUNCIL; SIERRA CLUB, Washington
State Chapter,

*Plaintiffs-Appellees*,

v.

MAIA D. BELLON, Director of
Washington State Department of
Ecology, in her official capacity;
MARK ASMUNDSON, Director,
Northwest Clean Air Agency, in his
official capacity; CRAIG T.
KENWORTHY, Director, Puget Sound
Clean Air Agency, in his official
capacity,

*Defendants-Appellants*.

No. 12-35323

D.C. No.
2:11-cv-00417-
MJP

WASHINGTON ENVIRONMENTAL
COUNCIL; SIERRA CLUB, Washington
State Chapter,

*Plaintiffs-Appellees*,

v.

MAIA D. BELLON; MARK
ASMUNDSON, Director, Northwest

No. 12-35324

D.C. No.
2:11-cv-00417-
MJP

Clean Air Agency, in his official
capacity; CRAIG T. KENWORTHY,
                    *Defendants*,


                    and


WESTERN STATES PETROLEUM
ASSOCIATION,
    *Intervenor-Defendant–Appellant*.


WASHINGTON ENVIRONMENTAL
COUNCIL; SIERRA CLUB, Washington
State Chapter,
                    *Plaintiffs-Appellants*,

                    v.

MARK ASMUNDSON, Director,
Northwest Clean Air Agency, in his
official capacity; CRAIG T.
KENWORTHY, Director, Puget Sound
Clean Air Agency, in his official
capacity; MAIA D. BELLON, Director
of Washington State Department of
Ecology, in her official capacity,
                    *Defendants-Appellees*,


                    and


WESTERN STATES PETROLEUM
ASSOCIATION,
                    *Intervenor-Defendant*.

No. 12-35358

D.C. No.
2:11-cv-00417-
MJP

ORDER

Appeal from the United States District Court
for the Western District of Washington
Marsha J. Pechman, Chief District Judge, Presiding

Argued and Submitted
July 10, 2013—Seattle, Washington

Filed February 3, 2014

Before: Andrew J. Kleinfeld, Milan D. Smith, Jr.,
and N. Randy Smith, Circuit Judges.

Order;
Concurrence by Judge Milan D. Smith, Jr.;
Dissent by Judge Gould

## SUMMARY[*]

### Environmental Law

The panel filed an order denying rehearing en banc in an action under the Clean Air Act.

In its opinion, the panel had vacated the district court's judgment and held that plaintiffs lacked standing to pursue a citizen suit seeking to compel the Washington State Department of Ecology and other regional agencies to regulate greenhouse gas emissions from the state's five oil refineries.

---

 [*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

Concurring in the denial of rehearing en banc, Judge M. Smith, joined by Judge N.R. Smith, wrote that the panel's holding was compelled by *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), which established stringent standing requirements for private litigants seeking to challenge the government's regulation of third parties.

Dissenting from the denial of rehearing en banc, Judge Gould, joined by Judges Wardlaw and Paez, wrote that the panel's opinion was overbroad and employed unduly restrictive language to foreclose citizen suits seeking to use the Clean Air Act to fight global warming. Judge Gould wrote that just as a state has Article III standing to sue the federal government to encourage federal action to stem global warming, so too may individuals or environmental organizations sue states to encourage state action for the same purpose.

## COUNSEL

Laura J. Watson (argued), Assistant Attorney General; Robert M. McKenna, Attorney General; and Katharine G. Shirey, Assistant Attorney General, Olympia, Washington; Svend A. Brandt-Erichsen, Marten Law PLLC, Seattle, Washington; Jennifer A. Dold, Puget Sound Clean Air Agency, Seattle, Washington, for Defendants-Appellants/Cross-Appellees.

Janette K. Brimmer (argued), Earthjustice Legal Defense Fund, Seattle, Washington; Brian W. Chestnut and Joshua A. Osborne-Klein, Ziontz Chestnut Varnell Berley & Slonim, Seattle, Washington, for Plaintiffs-Appellees/Cross-Appellants.

Jeffrey W. Leppo (argued), Matthew Cohen, and Jason T. Morgan, Stoel Rives LLP, Seattle, Washington, for Intervenor-Defendant-Appellant.

## ORDER

A judge of this court made a *sua sponte* call for a vote on rehearing this case en banc, pursuant to General Order 5.4(c)(3), but a majority of the nonrecused active judges of the court failed to vote in favor of rehearing this case en banc.[1]

Rehearing en banc is **DENIED**.

M. SMITH, Circuit Judge, with whom N.R. SMITH, Circuit Judge, joins, concurring with the denial of rehearing en banc:

A majority of this court's active, nonrecused judges has wisely declined to vote in favor of rehearing this case en banc.

Our holding in this case is compelled by the Supreme Court's decision in *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). While Judge Gould clearly favors a different result, his dissent ignores the facts before us, and fails to acknowledge the clear precedent by which we are bound. I offer a few brief thoughts in response to his dissent.

---

[1] Judges O'Scannlain, Graber, McKeown, and Christen were recused.

1. Judge Gould's dissent fails to distinguish *Lujan*, which established stringent standing requirements for private litigants seeking to challenge the government's regulation of third parties. *Lujan*, 504 U.S. at 561–69.

In *Lujan*, environmental groups challenged federal regulations that limited the reach of the Endangered Species Act (ESA), and they sought an injunction requiring the Secretary of the Interior to promulgate a new regulation. *Lujan*, 504 U.S. at 558–59. The Supreme Court held that the *Lujan* plaintiffs lacked standing. The Court explained: "when the plaintiff is not himself the object of the government action or inaction he challenges, standing . . . is ordinarily substantially more difficult to establish." *Id.* at 562 (internal quotation marks omitted). This is so because when "a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else* . . . causation and redressibility ordinarily hinge on the response of the regulated (or regulable) third party to the government action or inaction—and perhaps on the response of others as well." *Id*.

Accordingly, where a plaintiff seeks to compel the government to regulate a third party, the plaintiff can only establish standing by demonstrating: (1) that injunctive relief will cause the government to promulgate new regulations in the plaintiff's favor; and (2) that these regulations will *necessarily* cause the relevant third parties to adjust their conduct in a manner that will redress the plaintiff's alleged injury. *Id.* On a motion for summary judgment, a party cannot make this showing through "mere allegations, but must set forth by affidavit or other evidence specific facts."

*Id.* at 561 (internal quotation marks omitted). Applying this standard, the Supreme Court held that the *Lujan* plaintiffs lacked standing because, even if the Secretary of the Interior revised his regulation, the plaintiffs failed to show that such revisions would actually change the conduct of third parties. *Id.* at 563, 568–69.

2.  In this case, Plaintiffs sought an injunction requiring the state of Washington to promulgate regulations (RACT standards) governing five oil companies' greenhouse gas emissions. Accordingly, under *Lujan*, it was Plaintiffs' burden to come forward with evidence at the summary judgment stage demonstrating that injunctive relief would: (1) cause the Defendant-agencies to promulgate RACT standards that demand cleaner technology than the oil companies currently use; (2) that the oil companies would comply with these new standards; (3) that the oil companies' compliance would reduce greenhouse gas emissions; and (4) that these lower emissions would mitigate global climate change in a way that would alleviate Plaintiffs' alleged injuries.

Not only did Plaintiffs fail to introduce evidence satisfying *any* of these factors, but the state also introduced evidence that "RACT [standards] would likely not result in meaningful greenhouse gas reductions because RACT is a low bar and many sources are likely already meeting or exceeding RACT." Accordingly, we held that Plaintiffs did not meet their summary judgment burden under *Lujan*.

3.   Judge Gould's dissent misconstrues *Massachusetts v. EPA* (*Mass. v. EPA*), 549 U.S. 497 (2007), and ignores one of its key elements.   Judge Gould argues that, because the Supreme Court held that the state of Massachusetts had standing in *Mass. v. EPA*, the *Washington Environmental* Plaintiffs must have standing, as well.  He asserts that: (1) in *Mass. v. EPA*, the Supreme Court found a causal connection between certain greenhouse gas emissions and the state of Massachusetts' injuries resulting from global climate change; (2) the *Washington Environmental* Plaintiffs allege that certain greenhouse gas emissions have caused them injuries resulting from global climate change; therefore (3) the *Washington Environmental* Plaintiffs must have Article III standing.  The Supreme Court's reasoning does not support Judge Gould's syllogism.

While *Mass. v. EPA* held that Massachusetts established a causal connection between certain greenhouse gas emissions and its environmental injuries, it expressly applied a relaxed standing analysis based on two crucial characteristics of that case: (1) the asserted injury was an alleged *procedural* violation, *and* (2) the action was brought by a *sovereign state*.  *Mass. v. EPA*, 549 U.S. at 517–20.  Neither factor is present here.

While Judge Gould suggests that *Mass. v. EPA*'s extensive discussion regarding sovereign states was mere musing, he does not even attempt to respond to the fact that, in *Mass. v. EPA*, the state asserted a *procedural* injury, rather than a *substantive* injury.  The Clean Air Act (CAA) grants

citizens the right to file rulemaking petitions with the EPA, and it "recognize[s] a concomitant procedural right to challenge the rejection of [a] rulemaking petition . . . ." *Mass. v. EPA*, 549 U.S. at 519–20; *see also* 42 U.S.C. § 7607(b)(1). In *Mass. v. EPA*, the state of Massachusetts alleged that the EPA violated the state's *procedural* rights by arbitrarily and capriciously denying its rulemaking petition.   Unlike the *Lujan* and *Washington Environmental* plaintiffs, the state of Massachusetts did not seek an injunction requiring the EPA to promulgate a new regulation.   Massachusetts simply sought an order requiring the EPA to reconsider its rulemaking petition under the appropriate legal standard.

  In holding that Massachusetts had standing, the Supreme Court explained that a litigant can "assert [a procedural] right without meeting all of the normal standards for redressibility and immediacy."   *Id*. at 517–18 (internal quotation marks omitted).   Unlike parties who assert substantive injuries, a litigant "who alleges [a] deprivation of a procedural protection . . . never has to prove that if he [] receive[s] the procedure the substantive result would [be] altered."   *Id*. at 518.   Importantly, after holding that Massachusetts had standing, the Supreme Court merely ordered that, on remand, the EPA reconsider the state's rulemaking petition and "ground its reasons for action or inaction in the statute."   *Id*. at 535.  It is not difficult to see why the "the normal standards for redressibility and immediacy" would be relaxed in a case involving such limited relief.   But we have never extended this relaxed standard to cases, such as this, where litigants fail to invoke a statute's procedural provisions and instead seek substantive relief in the form of an injunction requiring the government to promulgate particular regulations.

4.   Judge Gould suggests that our opinion erects new and inappropriate barriers to environmental litigation.  Not so.  Our decision rests on a straightforward application of *Lujan* and *Mass. v. EPA*.  The opinion does nothing to restrict environmental litigation beyond those limitations already established by the Supreme Court.  And the opinion leaves open the many doors that previously existed under our case law for governmental entities and private parties to litigate with respect to injuries resulting from global climate change.  *See, e.g.*, 42 U.S.C. § 7477 (establishing that "[the Federal Government] shall, and a State may, take such measures, including . . . seeking injunctive relief, as necessary to [enforce the CAA]"); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–88 (2000) (establishing that private plaintiffs have standing to seek injunctive relief and civil damages for Clean Water Act violations, where the plaintiffs presented "affidavits and testimony" establishing each element of Article III standing); *Mass. v. EPA.* at 518–20  (establishing that sovereigns are entitled to "special solicitude in [the Supreme Court's] standing analysis" with respect to environmental injuries); *Citizens for Better Forestry v. U.S. Dep't of Agric.*, 341 F.3d 961, 970–71 (9th Cir. 2003) (establishing standing for citizens to allege procedural violations of the National Environmental Policy Act's notice and comment requirements and the ESA's consultation and biological-assessment requirements).  Judge Gould's concerns regarding the breadth of our opinion are unfounded.

5.   Finally, I am perplexed by Judge Gould's assertion that our opinion "interferes with the principle that individual states can experiment on a tough problem."  While Judge Gould invokes Justice Brandeis' famous words celebrating states' prerogative to "serve as [] laborator[ies] . . . [to] try

novel social and economic experiments," *New State Ice Co. v. Liebmann*, 285 U.S. 262, 311 (1932) (Brandeis, J., dissenting), those words are completely inapposite here.

This is not a case in which private individuals seek to preclude novel state action. This is a case in which Plaintiffs seek injunctive relief compelling a state to promulgate particular regulations that they claim are required by federal law. Despite Judge Gould's suggestion to the contrary, no one (other than Plaintiffs) seeks to interfere with Washington's ability to "experiment on a tough problem." If anything, our application of *Lujan*'s rigorous standing requirement safeguards Washington's power to do so.

For these reasons, and those more fully discussed in our opinion, I concur with the decision of the majority of this court's active, nonrecused judges to deny rehearing en banc.

---

GOULD, Circuit Judge, with whom WARDLAW and PAEZ, Circuit Judges, join, dissenting from the denial of rehearing en banc:

I regret that a majority of our court's active, nonrecused judges has not decided that the panel's overbroad opinion, which employs unduly restrictive language to foreclose citizen suits seeking to use the Clean Air Act to fight global warming, warrants rehearing en banc.

The panel concludes that because the plaintiff environmental organizations "are not sovereigns," the reasoning of the United States Supreme Court's decision in *Massachusetts v. EPA*, 549 U.S. 497 (2007), "cannot

logically apply . . . to this case," *Bellon*, 732 F.3d at 1146. Thus, and in a way not even favored by the prevailing party,[1] the panel has essentially read private citizens out of the equation when it comes to using courts to address global warming.    The majority's argument—whose logical conclusion is that non-state entities categorically lack standing to use the Clean Air Act to compel state action on global warming—disregards Supreme Court precedent, makes bad law for our circuit, and harms the public.

The panel distinguishes *Bellon* from the Supreme Court's decision in *Massachusetts v. EPA*, which held, among other things, that Massachusetts had standing to petition for review of an EPA order that denied a petition for rulemaking under the Clean Air Act to regulate greenhouse gas emissions from motor vehicles.  549 U.S. at 518–20.  As part of its support for standing, the Court in that case noted that Massachusetts, as a sovereign state, was "entitled to special solicitude in our standing analysis."  *Id.* at 520.

---

[1] The State of Washington, which prevailed before the panel, was asked to provide its views on en banc rehearing.  Naturally, it did not want en banc rehearing and a new panel, but it had these negative comments about the panel decision: "[T]he panel may want to rehear the matter to determine whether its decision contains unnecessarily broad dicta . . . ." The State of Washington added: "[T]he panel's opinion . . . includes dicta suggesting that it might be difficult for private plaintiffs ever to establish causation in a climate change lawsuit."    Defendant-Appellant Maia Bellon's Brief on Whether Case Should Be Reheard En Banc at 1-2, *Wash. Envtl. Council v. Bellon*, 732 F.3d 1131 (9th Cir. 2013) (Nos. 12-35323, 12-35324, & 12-35358).

The *Bellon* panel relies on this "special solicitude" language to reach its ill-conceived decision that Washington environmental organizations lack standing to use the Clean Air Act to compel state and regional agencies to regulate greenhouse gas emissions from the state's oil refineries. *See Bellon*, 732 F.3d at 1145 ("In contrast to *Massachusetts v. EPA*, the present case neither implicates a procedural right nor involves a sovereign state. Rather, Plaintiffs are private organizations, and therefore cannot avail themselves of the 'special solicitude' extended to Massachusetts by the Supreme Court."). The panel chastises the environmental organizations for "attempt[ing] to transplant the relaxed standing rule the Court carved out for a sovereign state" in *Massachusetts v. EPA* to their circumstances, and concludes that "Plaintiffs are not sovereign states and thus the Court's standing analysis does not apply." *Id.* at 1147.

*Massachusetts v. EPA*, in my view, does not mean that only states have standing for environmental challenges relating to global warming. The Supreme Court's reasoning endorsed the principle that causation and redressability exist, independent of sovereign status, when some incremental damage is sought to be avoided. Accordingly, *Massachusetts v. EPA* also confers standing upon individuals seeking to induce state action to protect the environment.

Although the panel stresses the "special solicitude" language of *Massachusetts v. EPA*, it ignores the logic of the Supreme Court's reasoning. EPA argued that "its decision not to regulate greenhouse gas emissions from new motor vehicles contributes so insignificantly to petitioners' injuries

that the Agency cannot be haled into federal court to answer for them." *Massachusetts v. EPA*, 549 U.S. at 523. In other words, EPA argued, there existed no "realistic possibility" that the marginal benefit of the regulation Massachusetts requested "would mitigate global climate change" to an extent that would remedy the injury alleged, especially in light of "predicted increases in greenhouse gas emissions from developing nations" like India and China. *Id.* at 523–24. EPA contended that because Massachusetts could not prove that EPA's decision not to regulate greenhouse gas emissions from new cars and trucks caused its climate change-related injuries, Massachusetts lacked standing to bring its suit. *Id.* at 523–25.

The Supreme Court squarely rejected this argument: "EPA overstates its case. Its argument rests on the erroneous assumption that a small, incremental step, because it is incremental, can never be attacked in a federal judicial forum." *Id.* at 524. Because agencies "do not generally resolve massive problems in one fell regulatory swoop," the Court concluded that Massachusetts had standing to file its suit compelling EPA to issue the regulation, even though "regulating motor-vehicle emissions will not by itself *reverse* global warming." *Id.* at 524–25. Similarly, the environmental organizations here, by compelling the State of Washington to act, could encourage incremental change that, per the logic of *Massachusetts v. EPA*, is sufficient for causation and redressability.

The *Bellon* panel ignores the Supreme Court's reasoning. First, it argues that "there are numerous independent sources

of GHG emissions, both within and outside the United States, which together contribute to the greenhouse effect." *Bellon*, 732 F.3d at 1144. This is true but not controlling. The Supreme Court has said that consideration of other countries' emissions is not relevant to our evaluation of climate change-related injuries. *See Massachusetts v. EPA*, 549 U.S. at 525–26 ("Nor is it dispositive that developing countries . . . are poised to increase greenhouse gas emissions substantially over the next century: A reduction in domestic emissions would slow the pace of global emissions increases, no matter what happens elsewhere."). Second, the panel decides that the environmental organizations' "causal chain is too tenuous to support standing" because "a multitude of independent third parties are responsible for the changes contributing to [their] injuries" and because the greenhouse gas emissions at issue make up only 5.9 percent of emissions in Washington. *Bellon*, 732 F.3d at 1143–46. This is true but irrelevant. "That a first step might be tentative does not by itself support the notion that federal courts lack jurisdiction to determine whether that step conforms to law." *Massachusetts v. EPA*, 549 U.S. at 524.

The panel concedes that the emissions at issue here "may be a significant portion of state emissions." *Bellon*, 732 F.3d at 1145–46. And yet it decides that the environmental organizations lack standing because of a dearth of evidence showing that emissions from the five oil refineries constitute a "meaningful contribution" to global greenhouse gas levels. *See id.* at 1146 (quoting *Massachusetts v. EPA*, 549 U.S. at 525). The panel thus imposes on the environmental organizations a mandate to show some unidentified threshold of emissions before they may bring their suit. In so doing, the

panel forecloses citizen suits seeking to use the Clean Air Act to compel states to act to fight global warming if those suits are brought by any non-state entity, ignoring the Supreme Court's reasoning in *Massachusetts v. EPA*.

Limiting the reasoning of *Massachusetts v. EPA* to cases involving sovereign states is a mistake that will harm the public. The panel's opinion unwisely requires courts to deny standing to any non-state plaintiff seeking to enforce the Clean Air Act's provisions in the effort to fight global warming, and relegates judges—and the general public—to the sidelines as climate change progresses. In my view, as our planet warms and our oceans rise, individual citizens should have standing to urge their states to take corrective incremental actions to combat global warming. By preventing such suits, the panel's opinion interferes with the principle that individual states can experiment on a tough problem. As Justice Brandeis recognized: "It is one of the happy incidents of the federal system that a single courageous state may, if its citizens choose, serve as a laboratory; and try novel social and economic experiments without risk to the rest of the country." *New State Ice Co. v. Liebmann*, 285 U.S. 262, 311 (1932) (Brandeis, J., dissenting).[2] In my view, states can take significant steps to slow or stop global warming by reducing greenhouse gas emissions. And just as a state has Article III standing to sue the federal government

---

[2] The concurrence of Judge M. Smith argues that Justice Brandeis's dissent in *New State Ice Co. v. Liebmann* is "completely inapposite" here. But because the panel opinion stops citizens from using litigation to prod their states into action against global warming, the opinion effectively interferes with the ability of states to experiment with solutions. Absent the type of public pressure that can arise through litigation, it might be expected that state responses to the threat of global warming will be less forceful and less frequent.

to encourage federal action to stem global warming, *see Massachusetts v. EPA*, 549 U.S. at 521, so too may individuals or environmental organizations sue states to encourage state action for the same purpose. The panel's opinion sadly stands in the way. I respectfully dissent from our failure to rehear this case en banc.[3]

---

[3] The concurrence of Judge M. Smith urges that *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), controls this case and was not given enough weight in my analysis. Judge M. Smith's opinion implies that no plaintiffs except states can go to court challenging global warming because of causation and redressability concerns. *See Bellon*, 732 F.3d at 1147 (holding that *Massachusetts v. EPA*, 549 U.S. 497 (2000), is inapplicable to this case because "Plaintiffs are not sovereign states and thus the Court's standing analysis does not apply"). But *Massachusetts v. EPA*, read with *Lujan*, suggests that a challenge can be made to part of the problem, and that solutions can be incremental. States can only sue the EPA if Article III's standing requirements, as defined by *Lujan*, are satisfied. The concurrence ignores that. *Massachusetts v. EPA*, in other words, must mean that the State of Massachusetts can show adequate causation on global warming despite worldwide increasing greenhouse gas emissions, whether from other countries or other states, and it clearly means that incremental efforts to stem the tide of climate change are sufficient under Article III to redress injuries caused by global warming. The *Bellon* plaintiffs seek to require state action addressing the problem of greenhouse gas emissions and satisfy the *Lujan* standards of causation and redressability under Article III for the same reasons that Massachusetts did.